IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 98-30550

Summary Calendar

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANNIE WILLIAMS BROWN, also known as Annie Brown Williams

Defendant-Appellant.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
(97-CR-184-1-R)

---

December 15, 1998

Before HIGGINBOTHAM, JONES, AND DENNIS, Circuit Judges.

PER CURIAM:[*]

Charged with conspiracy to possess with intent to distribute cocaine base, possession of ammunition by a convicted felon, and making a false statement to a government agency, Annie Williams Brown entered a conditional guilty plea, reserving her right to appeal the district court's denial of her motion to suppress. She now appeals both that denial and a sentence enhancement. We affirm.

I

---

[*]Pursuant to 5th Cir. R. 47.5 , the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R 47.5.4.

New Orleans Police Officer Randy Lewis began the investigation culminating in conviction after the police received an anonymous tip concerning drug activity at 500 St. Mary Street, Apartment C. Lewis observed heavy pedestrian traffic into and out of the apartment, and determined that Brown, who had a prior drug conviction, was leasing it. A confidential informant was able to purchase cocaine when Brown was in the apartment, but not when she left in what Lewis said was a white 1996 Toyota Four-Runner, which she drove in addition to a green Hyundai. Lewis also determined that Brown did not live in the apartment, but returned at night to her residence at 2723 Allen Street. He applied for search warrants for both locations, they were issued, and contraband was found at each.

The search at St. Mary's Street should be uncontroversial. Brown offered testimony in the district court seeking to undermine Lewis's story. For example, Brown's friends testified that the front door was broken, thus implying that Lewis could not have seen people entering the apartment. In addition, they testified that Brown had stopped using her Toyota long before. The district court found all this testimony unworthy of credence, and this finding was not clearly erroneous.

The search at Allen Street presents a closer call, but one that is nevertheless clear. Mere participation in illegal activity does not by itself create probable cause to search the participant's residence. See, e.g., United States v. Gramlich, 551 F.2d 1359, 1362 (5th Cir. 1977) (holding that smuggling contraband

50 miles from one's residence does not produce probable cause to search the residence); United States v. Lalor, 996 F.2d 1578, 1582-83 (5th Cir. 1993) (declaring a warrant invalid where there was no geographic relationship between the area where the drug sales occurred and the residence); cf. Zurcher v. Stanford Daily, 436 U.S. 547, 556 & n.6 (1978) (noting that the relevant question is whether it is reasonable to believe that the items to be seized will be found in the place to be searched). Residential searches are valid, however, "where some information links the criminal activity to the defendant's residence." Lalor, 996 F.2d at 1583. In this case, the officer's observation of Brown traveling between the locations, coupled with the determination that cocaine sales could not be consummated when Brown was away, provided probable cause to search the residence.

II

Brown's appeal of the two-point enhancement she received under § 2D1.1 of the United States Sentencing Guidelines also lacks merit. She received this enhancement because the search at her Allen Street residence revealed an unloaded .38 caliber revolver located in a dresser drawer also containing cocaine hydrochloride and women's clothing. There was no clear error in the district court's determination that it was not "clearly improbable that the weapon was connected to the offense." § 2D1.1 comment. (n.3). "The government may satisfy its burden of proving a connection by providing evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored . . . ." United States

3

v. Mitchell, 31 F.3d 271, 278 (5th Cir. 1994) (internal quotations omitted).

Brown complains that the gun was unloaded and therefore could not have been connected to a crime. We have rejected such complaints before. "The mere presence of a handgun can escalate the danger inherent in [commission of crimes]. Since it is difficult, if not impossible to tell from sight whether a gun is loaded or operational, an unloaded or broken gun may be of use in a criminal act." United States v. Paulk, 917 F.2d 879, 881 (5th Cir. 1991) (discussing § 2D1.1); see also United States v. Griffith, 118 F.3d 318, 326-28 (5th Cir. 1997) (rejecting a similar challenge in a case where the gun was unloaded, but compatible ammunition was nearby). To be sure, we would rather have criminals running around with unloaded guns than with loaded ones. Section 2D1.1, though, does not distinguish between loaded and unloaded guns, and neither does our case law.

AFFIRMED.